# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**HEATHER O.**[1],

                    Plaintiff,

        v.

**NANCY A. BERRYHILL,** Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

                    Defendant.

Case No. 3:18-cv-513-SI

**OPINION AND ORDER**

Robyn M. Rebers, ROBYN M. REBERS LLC, P.O. Box 3530, Wilsonville, OR 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Joseph J. Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Heather O. ("Plaintiff") seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the reasons stated below, the Commissioner's decision is reversed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on February 9, 2015, alleging disability beginning June 25, 2014. Plaintiff was born in November 1973 and was 40 years old at the date of her alleged disability onset. AR 80. In her application, Plaintiff alleges the following disabilities: spinal stenosis of the cervical spine; cervical disc disorder with myelopathy; cervical disc herniation; essential hypertension; sinus tachycardia; migraine with aura; and hypertriglyceridemia. *Id.* On April 6, 2015, the Commissioner denied Plaintiff's initial application for disability, AR 80-87, and again upon reconsideration. AR 89-97. Plaintiff appealed to an Administrative Law Judge ("ALJ"). On January 25, 2017, a hearing was held and Plaintiff testified, represented by counsel. AR 37-79. A medical consultant also testified. Plaintiff, her counsel, and the medical consultant discussed Plaintiff's psoriatic arthritis (diagnosed in August 2015, after Plaintiff filed her application) as a potentially disabling condition. On March 21, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from June 25, 2014 through the date of the decision. AR 18-27. Plaintiff filed an appeal with the Appeals Council. The Appeals Council denied review on February 21, 2018. AR 1-3. This denial of review made the decision of the ALJ the final decision of the Commissioner. Plaintiff seeks judicial review of that decision. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 25, 2014, the alleged disability onset date. AR 20. The ALJ noted that although Plaintiff worked and earned $56 in 2015, her earnings during the period at issue were below the threshold amount to be considered substantial gainful activity. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: spine

disorder; carpal tunnel syndrome; and recurrent arrhythmias. *Id.* At step three, the ALJ found

that the Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the impairments listed in the regulations. AR 20-21.

The ALJ then determined Plaintiff's RFC, finding that she could perform light work as

defined by the regulations with the following functional limitations:

> She can stand/walk for six hours total in an eight-hour workday.
> She can occasionally climb ramps and stairs. She can never climb
> ladders, ropes, scaffolds. She can occasionally balance, stoop,
> kneel, crouch, and crawl. She can frequently reach, handle, and
> finger with her dominant hand. She can occasionally reach
> overhead.

AR 22. At step four, the ALJ found that Plaintiff was capable of performing past relevant work.

AR 24. These jobs include: phlebotomist; photocopy machine operator; electronic component

processor; and can machine tender. AR 24-25.

In the alternative, the ALJ found that there were other jobs existing in the national

economy that Plaintiff could also perform. AR 25. At step five, the ALJ found that considering

Plaintiff's age, education, work experience, and RFC, Plaintiff could perform such jobs as: office

helper; mail clerk; gate guard; and security guard. AR 26. Accordingly, the ALJ found that

Plaintiff had not been under a disability, as defined in the Act, from June 25, 2014, through the

date of the ALJ decision, March 21, 2017. AR 26-27.

## DISCUSSION

Plaintiff seeks review of the final decision by the ALJ, concluding that Plaintiff was not

disabled. She argues: (A) that the ALJ erred at steps two and three of the sequential analysis

when she failed to consider whether Plaintiff's psoriatic arthritis met Listing 14.09(A)(2) for

inflammatory arthritis; (B) that the ALJ's RFC assessment is not supported by substantial

evidence in the record; and (C) that the ALJ erred when she failed to provide clear and

convincing reasons for rejecting Plaintiff's symptom testimony. The Court will address each of these arguments in turn.

## A. Exclusion of Psoriatic Arthritis at Steps Two and Three

Plaintiff first asserts that the ALJ erred by failing to list one of Plaintiff's most limiting impairments, psoriatic arthritis, at step two of the sequential analysis, and that the error was harmful and thus grounds for reversal. Plaintiff additionally argues that the ALJ erred at step three because Plaintiff's psoriatic arthritis met Listing 14.09(A)(2) in the regulations, which directs a finding of disability.

### 1. Step Two

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process. 20 C.F.R. § 416.912(a)(c). In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that she has a severe impairment. *Id.* The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). When the ALJ finds any of a claimant's impairments to be severe, the ALJ continues with the sequential analysis, considering the effect of all of the claimant's impairments, whether severe or non-severe. Social Security Ruling ("SSR") 96-9p, *available at* 1996 WL 374184, at *5. Therefore, reversible error occurs only when a severe impairment erroneously excluded at step two caused additional functional limitations not accounted for in the remainder of the analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Buck misunderstands the purpose of step two in the analysis.

Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not. Here, all impairments were taken into account both times. Moreover, step two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced." (citations, quotation marks, and alteration omitted)).

At step two in the sequential analysis, the ALJ concluded that Plaintiff had severe impairments, including spine disorder, carpal tunnel syndrome, and recurrent arrythmias. The ALJ did not discuss psoriatic arthritis at step two. Based on the ALJ's determination that Plaintiff did have severe impairments, the ALJ found in Plaintiff's favor and moved on to step three to determine whether Plaintiff's combination of impairments, severe or not, met or equaled one or more of the impairments listed in regulations.

Plaintiff argues the ALJ erred because her medical record supports a severe impairment of psoriatic arthritis at step two of the sequential analysis, which limits the functions of her hands and wrists. The medical record shows Plaintiff was diagnosed with psoriatic arthritis by a rheumatologist during a clinical exam in August 2015. AR 398. Plaintiff's exam results from that visit indicate that she had diffuse swelling of the fingers with tightening of the overlying skin, psoriasis, elevated C-reactive protein, and dactylitis. *Id.* As a result of the visit, Plaintiff began treatment with methotrexate. *Id.*

As previously explained, not every error at this stage is reversable. Indeed, omissions at step two are often harmless error if step two is decided in plaintiff's favor. *See Buck*, 869 F.3d at

1049; *Burch*, 400 F.3d at 682. The critical inquiry is whether a severe impairment erroneously excluded at step two caused additional functional limitations not accounted for in the remainder of the analysis. *Burch*, 400 F.3d at 689; *see also Lewis*, 498 F.3d at 911. Assuming without deciding that the ALJ's decision in not listing psoriatic arthritis at step two was error, it was harmless at step three as discussed below. It was also harmless because the ALJ considered Plaintiff's severe and non-severe limitations in evaluating Plaintiff's RFC, although the Court finds that the ALJ properly did not consider Plaintiff's psoriatic arthritis in evaluating Plaintiff's RFC, as discussed below.

**2. Step Three**

Plaintiff argues that if her psoriatic arthritis had been found to be a severe impairment at step two, then at step three it would have met the impairment Listing 14.09(A)(2) for inflammatory arthritis and thus would have directed a determination of disability. As explained above, step three requires the ALJ to determine whether the severe impairments or combination of impairments identified at step two "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the answer to that inquiry is yes, then the Act directs a finding of disability. If the answer is no, then the ALJ must proceed and determine Plaintiff's RFC. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir 2013) (quoting *Sullivan v. Zebley*, 492 U.S. 521, 532 (1980)).

At step three, the ALJ evaluated Plaintiff's spine disorder, carpal tunnel syndrome, and recurrent arrythmias, and determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in the regulations. Regarding Plaintiff's carpal tunnel syndrome, the ALJ explained:

> Carpal tunnel syndrome is not itself a listed impairment, but a claimant with carpal tunnel syndrome may be found to "meet" the requirements of a listing if there is an impairment that, in combination with carpal tunnel syndrome, meets the requirements of a listing. Carpal tunnel syndrome, by itself or in combination with other impairments, may also be found "medically equivalent" to a listed impairment.

AR 21. The ALJ evaluated Plaintiff's hand-related impairments under what the ALJ concluded to be the most similar listing, 1.02 (major dysfunction of a joints).[2] The ALJ found that Plaintiff's carpal tunnel syndrome and related non-severe impairments did not meet or equal the Listing 1.02 because the impairment did not result in either the inability to ambulate effectively on a sustained basis, or the inability to perform fine and gross movements effectively on a sustained basis. AR 22.

### a. Listing 14.09(A)(2) for Inflammatory Arthritis

Plaintiff argues that her psoriatic arthritis meets or equals Listing 14.09(A)(2) for inflammatory arthritis because the arthritis significantly limits the use of her hands.[3] According

---

[2] A "major dysfunction of a joint(s) (due to any cause)" is defined in 20 C.F.R. § 1.02(B) as a "gross anatomical deformity and chronic joint pain stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging . . . of the affected joint(s)" with "[i]nvolvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively" or "[i]nvolvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively." Major peripheral joints are the hip, knee, shoulder, elbow, wrist-hand, and ankle-foot. 14.00(C)(8) (citing 1.00(F)).

[3] Plaintiff notes that Listing 14.09 expressly identifies psoriatic arthritis under 14.00(D). But the listing merely identifies psoriatic arthritis as a disorder associated with inflammatory arthritis involving major peripheral joints. To meet or equal Listing 14.09 Plaintiff's must still satisfy the requirements of 14.00(D)(6)(e)(i), namely that her impairments result in an inability to perform fine and gross movements effectively. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) ("The [Commissioner] does not consider a claimant's impairment to be one listed in Appendix 1 solely because it has the *diagnosis* of a listed impairment. 'It must also have the *findings* shown in the Listing of that impairment.'" (emphasis added in *Marcia*) (quoting § 404.1525(d)) (citation omitted)).

to the regulation, "listing-level severity" for Listing 14.09, requires the showing of an "'extreme' (very serious) limitation" with "persistent inflammation or deformity" in one or more major peripheral joints, *i.e.*, wrist-hand. 1400(D)(6)(e)(i) (emphasis in original). The inflammation or deformity for Listing 14.09 must result in "the inability to perform fine and gross movements effectively." *Id.* (citing to 14.00(C)(7), which cites to 1.00(B)(2)(c)). This is the same as is required for Listing 1.02, which was evaluated by the ALJ. In other words, under either Listing 1.02 or Listing 14.09, Plaintiff was required to show an inability to perform fine and gross movements effectively. The ALJ concluded that Plaintiff did not make such showing.

### b. Inability to Perform Fine or Gross Movements Effectively

The ALJ's conclusion that Plaintiff's wrist-hand impairments did not result in an inability to perform fine and gross movements effectively is supported by substantial evidence in the record, including Plaintiff's medical records, the testimony of Dr. Eric Schmitter, and Plaintiff's activities. The inability to perform fine and gross movements effectively on a sustained basis means "an *extreme loss of function* of both upper extremities," which "interferes *very seriously* with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 14.00(C)(7) (citing 20 C.F.R. § 1.00(B)(2)(c)) (emphasis added). Examples of such inability include the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level. 20 C.F.R. § 1.00(B)(2)(c). To use upper extremities effectively, Plaintiff must be capable of reaching, pushing, pulling, grasping, and fingering. *Id.*

Plaintiff's medical record does not suggest Plaintiff's impairments result in an extreme loss of function, which interferes very seriously with Plaintiff's ability to initiate, sustain, or complete activities. During a clinical exam in August 2015, Rheumatologist Dr. Erin Snell noted diffuse swelling of the fingers of Plaintiff's right hand, greater than the left hand, with tightening

of the overlying skin. AR 396. Dr. Snell noted normal mineralization, normal alignment, and joint space preserved. There were no erosions present and only a minimal degree of marginal spurring at the first carpometacarpal joints bilaterally. AR 398. Dr. Snell diagnosed Plaintiff with psoriatic arthritis, in-part based on Plaintiff's self-report of nail changes, and started her on methotrexate. *Id.*

At a follow-up visit in October 2015, Plaintiff's symptoms reportedly improved by 50 percent. AR 401. In November 2015, Plaintiff's musculoskeletal exam was normal, including no joint tenderness, deformity, or swelling, and Plaintiff was reportedly taking her medications without side effects. AR 408. Additionally, it was noted that Plaintiff exercised at a moderate to strenuous level and stretched one hour per week. AR 412. In February 2016, during a second visit with Dr. Snell, only mild swelling was reported in Plaintiff's right hand, greater than the left, with no other tenderness or deformity. AR 417. Dr. Snell did not note any functional problems relating to hand motion or strength. Because Plaintiff's records indicate that her condition improved over time, and that she suffered only from mild swelling, with no other tenderness or deformity as late as February 2016, Plaintiff cannot show that her medical records support an extreme loss of function that seriously interferes with her ability to perform activities, which is necessary to satisfy "the high level of severity" required for the listing. " *Kennedy*, 738 F.3d at 1176.

Furthermore, although the ALJ did not discuss Plaintiff's alleged psoriatic arthritis during step two of the analysis, the ALJ did not fail to discuss the condition entirely. During the ALJ's RFC analysis (discussed below), the ALJ noted:

> The record also states [Plaintiff] is diagnosed with mild carpal
> tunnel syndrome, with symptoms similar to psoriatic arthritis; and,
> she has a history of an ulnar injury. However, Dr. Schmitter stated
> that there is little evidence in the record that her impairments cause

more than mild limitations. For instance, the doctor stated that
most physical examinations of the claimant in the record noted
mostly mild findings. As for the claimant's vocational limitations,
the doctor opined the claimant has mild motion limitations in her
dominant hand.

AR 24.

On January 25, 2017, during the Plaintiff's disability hearing, Dr. Schmitter reviewed

Plaintiff's medical records and testified as to his conclusions. According to Dr. Schmitter, the

medical records indicate that Plaintiff suffered from "psoriatic arthritis symptoms." AR 42.

Because the records were sparse, however, Dr. Schmitter could not make a factual determination

as to the severity of the condition. AR 43. When asked whether he would find any limitations

appropriate, Dr. Schmitter replied:

I tried to . . . explain that. The only finding of significance would
be psoriatic arthritis. . . . And I simply am not able to answer your
question because I don't have any objective evidence of the
severity of the involvement of her hands, which would affect
manipulation, fingering, and that sort of activity.

*Id.* Dr. Schmitter did note that Plaintiff's long-term treatment with methotrexate suggested that

Plaintiff had "some degree" of psoriatic arthritis. But without additional evidence, such as an x-

ray of Plaintiff's hands, he could not make a further factual determination regarding severity. *Id.*

Dr. Schmitter opined that absent evidence of deformity or loss of motion, the medical record

would suggest only "a relatively mild form of psoriatic arthritis." AR 49. Although Plaintiff's

medical records do reflect a loss of motion in her neck, the only mention with regard to her

wrist-hand impairments is that there was mild swelling and tightening of the overlying skin.

Moreover, Plaintiff's reported activities do not support extreme loss of function of both

upper extremities that severely limit her ability to independently initiate, sustain, or complete

activities. Plaintiff can prepare simple meals. She cares for her teenage daughter and older,

autistic son. She can perform simple errands with and for them, meaning she can do some

driving. Although she asserts that she needs someone with her in the car because her neck mobility impairments mean she has blind spots when driving, she does not claim that her hands are unable to grasp the wheel, shift gears, or handle the necessary switches to turn on lights or windshield wipers or open doors or windows. Those are the type of issues an extreme loss of fine or gross movements would affect. She also does not indicate that she has problems with maintaining her personal hygiene.

The ALJ's findings must be upheld if supported by inferences reasonably drawn from the record. *See Batson*, 359 F 3d. at 1193. The reasonable inference from Plaintiff's medical records, Dr. Schmitter's testimony, and Plaintiff's activities are that she does not have an extreme loss of function that interferes very seriously with her activities based on her psoriatic arthritis. Therefore, the ALJ's determination the Plaintiff's conditions did not result in an inability to perform fine and gross movements effectively on a sustained basis is supported by substantial evidence. Accordingly, the Court finds that the ALJ did not err in concluding at step three that Plaintiff did not meet Listing 1.02. Because Listing 14.09 requires the same showing of inability, no harm resulted from the ALJ's decision to evaluate Plaintiff's impairment under Listing 1.02 instead of Listing 14.09.

## B. ALJ's RFC determination

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Plaintiff contends that based on the medical evidence and Plaintiff's testimony the ALJ should have included more restrictive limitations relating to Plaintiff's use of her hands, her ability to stand and walk for sustained periods, her ability to reach, her need to take extra breaks, and her limited range of motion in her neck.

The RFC is the maximum that a claimant can do despite his or her limitations. 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a

claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Centanni v. Berryhill*, 729 F. App'x 560, 562 (9th Cir. 2018) (noting that "the ALJ properly included in the RFC all limitations that were supported by and consistent with substantial evidence").

The ALJ purported to consider the entire record. The ALJ, however, did not discuss the medical records relating to Plaintiff's psoriatic arthritis. In discussing Dr. Schmitter's testimony, the ALJ stated that Plaintiff was diagnosed with "mild carpal tunnel syndrome, with symptoms similar to psoriatic arthritis." AR 24. Plaintiff, however, was diagnosed with carpal tunnel syndrome *before* she was diagnosed with psoriatic arthritis—she was later diagnosed with psoriatic arthritis. The ALJ does not discuss this diagnosis, the medical records from Plaintiff's rheumatologist, or Dr. Schmitter's discussion of Plaintiff's diagnosis and treatment for psoriatic arthritis. Nor does the ALJ acknowledge Dr. Schmitter's criticism of the "substandard" care he believed Plaintiff received for her psoriatic arthritis and poor documentation of her treatment, or the fact that Dr. Schmitter could not opine regarding Plaintiff's limitations caused by this condition because of the inadequate documentation and care. *See* AR 43 (stating that he cannot opine about limitations from psoriatic arthritis because he does not have sufficient objective medical evidence of the severity of the involvement of Plaintiff's hands); 45 (noting that without an x-ray or an "actual description" of Plaintiff's hands he cannot opine about the severity of her mobility or limitations caused by her psoriatic arthritis); 50 (noting that failure to get an x-ray

before placing a patient on Methotrexate for psoriatic arthritis "smacks of poor medical care" and is "substandard" or "negligent" because getting an x-ray is a "pretty standard thing to do").[4]

The ALJ stated that Dr. Schmitter had concluded that Plaintiff had mild motion limitations in her dominant hand. That conclusion, however, was from the state agency reviewing doctors, not Dr. Schmitter. The state agency reviewing doctors reviewed Plaintiff's records before she saw the rheumatologist and before she was diagnosed with psoriatic arthritis. Dr. Schmitter noted that Plaintiff's only finding of significance was her psoriatic arthritis. AR 43. He noted that Methotrexate is a "serious drug treatment," which indicates that Plaintiff's difficulty with manipulation and fingering from psoriatic arthritis was of "some significance." *Id.* But he repeatedly emphasized the insufficiency of the medical record and his *inability* to render an opinion on Plaintiff's manipulation and fingering. He did note, however, that people with psoriatic arthritis can have small joint arthritis involving fingers and toes, that such problems are "not rare at all," can be "quite severe" and are "pretty common." *Id.*

The ALJ's failure to discuss Plaintiff's psoriatic arthritis, failure to address the medical records relating to Plaintiff's psoriatic arthritis, and conclusion that Dr. Schmitter found Plaintiff had only mild motion limitations in her dominant hand renders the RFC's limitations regarding fingering and manipulation not supported by substantial evidence in the record. The support for the ALJ's fingering and manipulation is the state agency reviewing doctors, who reviewed the record before Plaintiff was seen by the rheumatologist. No state agency reviewing doctor reviewed the records that included Plaintiff's rheumatologist records. Dr. Schmitter expressly

---

[4] It appears, however, that Plaintiff did have an x-ray taken of both hands on August 18, 2015. AR 454 (imaging report from bilateral hands x-ray); *see also* AR 391 (discussing the x-ray and commenting that Plaintiff was referred to rheumatology); AR 398 (progress notes from Plaintiff's rheumatologist setting out a summary of the imaging report from the x-ray of Plaintiff's "hands").

testified that he could not opine regarding fingering and manipulation limitations. The ALJ did not review and analyze the medical evidence relating to Plaintiff's psoriatic arthritis. Whether the record requires supplementation or a more detailed review and discussion of all the records and evaluation of Plaintiff's limitations with her psoriatic arthritis considered is something the Commissioner will have to consider on remand.

Similarly, the ALJ's conclusions regarding Plaintiff's ability to stand and walk are not supported by substantial evidence. Dr. Schmitter noted that psoriatic arthritis can affect toes. Plaintiff testified that her toes are affected. The ALJ improperly discounted this testimony.

Plaintiff also contends that she has significantly reduced range of motion in her neck[5] not accounted for in the ALJ's RFC determination, and therefore the RFC is "defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). In *Valentine*, the Ninth Circuit explained that an "RFC that fails to take into account a claimant's limitations is defective" because it omits information that could be relied on in the remainder of the disability analysis. *Id.* The court in *Valentine* concluded, however, that the ALJ in that case had not rendered the RFC defective, despite Plaintiff's contentions, because the alleged ignored information would have been consistent with the ALJ's ultimate RFC determination. *Id.* at 691.

The record supports that Plaintiff had significant reduced range of motion in her neck, which Dr. Schmitter opined was consistent with cervical fusion surgery. AR 47, 396. The RFC does not include any limitation in Plaintiff turning her head side-to-side, which is where her mobility is restricted. The fact that the RFC includes some limitation on climbing, stooping, kneeling, crouching, crawling, and so forth does not address Plaintiff's problems with turning her

---

[5] The ALJ cites to Plaintiff's "back" pain in the ALJ's decision. Because this relates to Plaintiff's cervical disc disorder, the Court discusses this as Plaintiff's "neck" condition.

head. There may be jobs that don't include climbing, stooping, kneeling, and that type of positional change but do require the worker to turn his or her head. Accordingly, the Commissioner needs to consider Plaintiff's reduced range of neck motion in assessing her potentially ability to perform certain jobs.

## C. Plaintiff's Symptom Testimony

Plaintiff challenges the ALJ's adverse credibility finding,[6] arguing that the ALJ erred by failing to provide "clear and convincing" reasons to support her assessment that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

---

[6] Effective March 16, 2016, the Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. See SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In March 2015, Plaintiff submitted her Adult Function Report stating she suffers from persistent pain, numbness, and fatigue. AR 187. She claimed she experiences pain and numbness in her dominant hand, which limits her ability to use it. *Id.* She also claimed she suffers from swelling and pain in her non-dominant hand, and muscle spasms in her neck, shoulders, and in both arms. *Id.* Further, she claims she has nerve pain throughout her whole body, and fatigue, which prevents her from lifting more than 15 pounds. AR 192.

In January 2017, Plaintiff testified at her hearing that she was unable to work because of her symptoms. Plaintiff claimed she has chronic pain, history of ulnar injury, degenerative disc disease in her spine, status post fusion, heart problems, numbness and swelling in her feet and

ankles, carpal tunnel in her wrists, pain in her toes due to arthritis, and pain in her hands due to

arthritis, with additional problems in her right hand. AR 55, 58, 61. She noted that her

impairments make it painful for her to hold her head up and claimed that she is easily fatigued

and often gets dizzy while standing. AR 55. Plaintiff claims she cannot sit in certain positions for

too long due to discomfort. *Id.* Plaintiff further noted that after her neck surgery she attended

physical therapy for a few months but stopped going due to cost concerns. *Id.*

The ALJ determined that Plaintiff's medically determinable impairments could

reasonably be expected to cause Plaintiff's alleged symptoms. The ALJ then found that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

impairments were not entirely consistent with evidence in the record.[7]

### 1. Neck Pain

Regarding Plaintiff's severe neck pain, which she alleges limits her ability to stand, walk,

sit, lift, and carry objects, the ALJ discounted this testimony because Plaintiff's surgery

adequately treated this condition and Plaintiff stopped going to physical therapy and only

occasionally took prescription opioid pain medication. Plaintiff was diagnosed with cervical disc

disorder with myelopathy and cervical spinal stenosis in July 2014. Plaintiff underwent cervical

fusion with laminectomy surgery in August 2014. Post-surgery imaging of Plaintiff's spine

showed the hardware in good position and indicated that no further surgery was necessary.

Treatment notes in July and August 2015 reflected mild findings, noting that Plaintiff's stiffness

and pain in her neck and arm had "somewhat" improved. AR 383, 398.

---

[7] The ALJ did not find evidence of malingering.

### i. Surgical treatment

Plaintiff argues that the medical evidence the ALJ relied on (where Plaintiff reported that her pain was "somewhat" improved) is not a clear and convincing reason to discount her testimony regarding her limitations. Plaintiff notes that she consistently reported ongoing pain and spasms after her 2014 surgery. Plaintiff contends that some pain improvement is to be expected post-surgery, considering the severity of Plaintiff's pre-surgery condition. Plaintiff also argues that pain being "somewhat" improved doesn't undermine Plaintiff's testimony. Plaintiff also notes that the ALJ ignored a post-surgical MRI, which showed that the signal abnormality within the cord at C5-6 was grossly unchanged from Plaintiff's pre-surgical state.

Dr. Schmitter testified that the type of surgery Plaintiff underwent, with regards to treating pain, "is rarely helpful, and almost inevitably, [the patient] can continue having pain." AR 46. The ALJ did not discuss this opinion by Dr. Schmitter, despite giving Dr. Schmitter's opinions "great weight." Moreover, allegations of pain cannot be discredited solely because of lack of objective physical examinations and test findings. *See Rollins v. Massanari*, 261 F.3d 853, 859 (9th Cir. 2001) (noting that "the adjudicator may not discredit [her] allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence" (quoting *Bunnell*, 947 F.2d at 343)). Accordingly, the ALJ did not provide a clear and convincing reason to discount Plaintiff's testimony regarding her neck pain.

### ii. Physical therapy

The ALJ's reliance on Plaintiff's discontinuance of physical therapy is misplaced. Plaintiff provided a reason why she ended treatment: she could not afford it. *See Orn*, 495 F.3d at 638 (noting that "disability benefits may not be denied because of the claimant's failure to obtain treatment . . . for lack of funds"). Plaintiff's reason is consistent with her treatment notes. *See* AR 244.

### iii. Opioids

Plaintiff's medical records indicate that she declines taking Hydrocodone (Vicodin) and Oxycodone (Percocet) because they make her vomit. *See* AR 417. When she stopped taking Dilaudid, another opioid, she was still taking Gabapentin, a prescription medication for nerve pain, and sometimes took Valium as a muscle relaxant. *See* AR 383-85. The chart note narrating that she had stopped taking Dilaudid was a gynecological visit and did not explain why she stopped taking Dilaudid. Given Plaintiff's problems with other opioids and the fact that she continued to take other prescription medications for pain and continued to regularly report to her treating providers that she had neck, arm, hand, and feet pain, the Court does not find Plaintiff's stopping Dilaudid to be a clear and convincing reason to discount her pain testimony.

### 2. Fingering and Manipulation

Regarding Plaintiff's ability to use her hands and wrist, the ALJ similarly determined Plaintiff's symptoms were not entirely consistent with the medical record. Plaintiff testified that she suffers from manipulative limitations, cannot grip anything tight, and has pain in joint spaces. AR 59. Treatment notes indicate that Plaintiff consistently reported wrist and hand pain and loss of function. AR 375, 389, 391, 393, 401, 416. Plaintiff's hand x-ray showed a minimal degree of marginal spurring at the first carpometacarpal joint and she was observed with diffuse swelling in her hands, with the right hand worse than the left hand and including tightening of the overlying skin, which is some evidence of abnormality. AR 398, 402. Also, as discussed above, the ALJ did not discuss the medical records relating to Plaintiff's psoriatic arthritis, which are the most relevant records to Plaintiff's testimony regarding these alleged limitations. Accordingly, the ALJ's conclusion that Plaintiff's testimony was inconsistent with the medical evidence is not supported by substantial evidence in the record and is not a clear and convincing reason to discount this testimony.

### 3. Daily Living Activities

Regarding all of Plaintiff's symptoms, including fatigue from her recurrent arrhythmias, the ALJ determined that Plaintiff's ability to perform a wide variety of daily activities was not entirely consistent with her subjective symptom testimony. Plaintiff reported in her Adult Function Report that she prepares coffee and cereal, and watches television daily. AR 54, 188. She also cleans her kitchen and bathroom, with some success, and rests in the afternoons. AR 188. With help, she prepares meals two to four days per week, and makes dinner in the evening, sometimes microwavable or frozen. AR 52, 189. Plaintiff also takes care of her oldest son, who is autistic, and takes him on errands with her. AR 52. During her hearing, Plaintiff testified that she drives an average of two times per week to run errands and to pick up her daughter from work. *Id.* Plaintiff also occasionally attends her daughter's school activities. AR 188.

Plaintiff argues that the ALJ's general finding that Plaintiff was able to perform "a variety of activities" despite her impairments is insufficient to discount Plaintiff's subjective symptom testimony. The Court agrees. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted). However, the ALJ must make "'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily

activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting

*Burch*, 400 F.3d at 681).

The ALJ made a general finding that Plaintiff was able to perform a "wide variety of

activities" even with her impairment. AR 24. The ALJ did not, however, provide any analysis as

to which of Plaintiff's activities contradicts what symptom testimony, or which of Plaintiff's

daily activities could be transferrable to a work setting. Because the ALJ did not make the

"specific findings" necessary to support an adverse subjective symptom determination, the ALJ

recitation to Plaintiff's activities was not a clear and convincing reason to discredit Plaintiff's

testimony regarding her limitations. *Orn*, 495 F.3d at 639.

### D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.

Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether

the ALJ made a legal error and then reviews the record as a whole to determine whether the

record is fully developed, the record is free from conflicts and ambiguities, and there is any

useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ erred in considering Plaintiff's testimony and in determining Plaintiff's RFC. The record, however, is not free from conflicts and ambiguities. Indeed, it may even require supplementation if more information regarding Plaintiff's psoriatic arthritis is required. Accordingly, a remand for benefits is not appropriate and this case is remanded for further proceedings consistent with this Opinion and Order.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled was not based on substantial evidence and is therefore REVERSED AND REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge